1  EILEEN M. DECKER
   United States Attorney
2  THOMAS D. COKER
   Assistant United States Attorney
3  Chief, Tax Division
   ROBERT F. CONTE (Cal. Bar No. 157582)
4  Assistant United States Attorney
       300 North Los Angeles Street
5      Federal Building, Room 7211
       Los Angeles, California  90012
6      Telephone: (213) 894-6607
       Facsimile: (213) 894-0115
7      E-mail: robert.conte@usdoj.gov
   JORGE ALMONTE
8  Assistant Chief (DC Bar No. 481391)
   JASON M. SCHEFF
9  Trial Attorney (NY Bar No. 5188701)
   U.S. Department of Justice, Tax Division
10     601 D Street, N.W., Room 7548
       Washington, D.C.  20004
11     Telephone: (202) 305-3676
       Facsimile: (202) 616-1786
12     E-mail: jorge.almonte@usdoj.gov
               jason.m.scheff@usdoj.gov
13

14             UNITED STATES DISTRICT COURT

15          FOR THE CENTRAL DISTRICT OF CALIFORNIA

16                    WESTERN DIVISION

17

18  UNITED STATES OF AMERICA,        No. CR 16 **CR 16 00151**

19                  Plaintiff,       PLEA AGREEMENT FOR DEFENDANT
                                     DAVID RAMIN KALILI
20                  v.

21  DAVID RAMIN KALILI,

22                  Defendant.

23

24       1.   This constitutes the plea agreement between DAVID RAMIN

25  KALILI ("defendant") and the United States Attorney's Office for

26  the Central District of California and the U.S. Department of

27

28                            1

1  Justice, Tax Division (collectively the "USAO") in the above-
2  captioned case.  This agreement is limited to the USAO and
3  cannot bind any other federal, state, local, or foreign
4  prosecuting, administrative, or regulatory authorities.

5                       DEFENDANT'S OBLIGATIONS

6       2. Defendant agrees:

7            a) To give up the right to indictment by a grand jury
8  and, at the earliest opportunity requested by the USAO and
9  provided by the Court, appear and plead guilty to a one-count
10 Information in the form attached to this agreement or a
11 substantially similar form, which charges defendant with willful
12 failure to file a report of foreign bank and financial accounts
13 ("FBAR"), in violation of 31 U.S.C. §§ 5314 and 5322(a) and 31
14 C.F.R. §§ 1010.350, 1010.306(c, d), and 1010.840(b).

15           b) To not contest the facts agreed to in this
16 agreement.

17           c) To abide by all agreements regarding sentencing
18 contained in this agreement.

19           d) To appear for all court appearances, surrender as
20 ordered for service of sentence, obey all conditions of any
21 bond, and obey any other ongoing court orders in this matter.

22           e) To not commit any crime; however, offenses that
23 would be excluded for sentencing purposes under the United
24 States Sentencing Guidelines ("U.S.S.G." or "Sentencing
25 Guidelines") § 4A1.2(c) are not within the scope of this
26 agreement.

27

28                              2

1    f) To be truthful at all times with Pretrial Services,
2 the United States Probation Office, and the Court.

3    g) To pay the applicable special assessment at or
4 before the time of sentencing unless defendant lacks the ability
5 to pay and submits a completed financial statement on a form to
6 be provided by the USAO.

7    h)  To make full restitution for the losses caused by
8 defendant's activities.  Defendant will pay restitution prior to
9 sentencing, based on his financial ability to pay.  Defendant
10 will not seek the discharge of any restitution obligation, in
11 whole or in part, in any present or future bankruptcy
12 proceeding.

13    i)  To cooperate with the IRS in the civil
14 examination, determination, assessment and collection of income
15 taxes related to defendant's 2003 through 2009 individual income
16 tax returns and any related corporate/entity tax returns, and
17 further agrees not to conceal, transfer, or dissipate funds or
18 property that could be used to satisfy such taxes, penalties and
19 interest.

20    j) To give up any and all objections that could be
21 asserted to the Examination Division of the Internal Revenue
22 Service ("IRS") receiving materials or information obtained
23 during the criminal investigation of this matter, including
24 materials and information obtained through grand jury subpoenas
25 and other legal process.

26    k) That defendant is liable for the civil fraud
27 penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663,

28                                 3

on the understatement of his individual income taxes for
calendar years 2003 through 2009.  Defendant agrees that a civil
penalty under 26 U.S.C. § 6663 may be assessed against him.

l) That nothing in this agreement shall preclude or
bar the IRS from the assessment and/or collection of any
additional tax liability, including interest and penalties,
determined to be due and owing from defendant by the IRS for the
years 2003 through 2009.

m) That, in order to resolve defendant's civil
liability for failing to file a Report of Foreign Bank and
Financial Accounts, Forms TD F 90-22.1, and other foreign
information reporting obligations under the United States law,
for calendar year 2009, defendant will pay a civil penalty to
the IRS equal to fifty percent of the highest total balance of
each of the foreign financial accounts in which defendant had a
financial interest, or over which defendant had signature or
other authority, during calendar year 2009.  Based upon
information now available to the USAO (including representations
by defendant), the parties agree that the civil penalty to be
paid shall not be less than $1,325,121, representing defendant's
portion of fifty percent of the balance in an account in
Switzerland and fifty percent of the balance in an account
Israel, in which defendant had a financial interest, or over
which defendant had signature authority, as of June 2009 and
August 2009, respectively.  Defendant agrees to pay the civil
penalty prior to sentencing to the United States Treasury,
through the U.S. Department of Justice, Tax Division.

4

1        n) To agree to and not oppose the imposition of the

2  following conditions of probation or supervised release: that

3  defendant shall cooperate with the payment of all delinquent

4  federal and state taxes, and any related penalties and interest

5  that may be imposed; that defendant shall truthfully and timely

6  file and pay taxes during the period of supervised release; and

7  that defendant will show proof to the Probation Officer of

8  compliance with the aforementioned conditions of supervised

9  release.

10                     THE USAO'S OBLIGATIONS

11      3.   The USAO agrees to:

12        a) Not contest the facts agreed to in this agreement.

13        b) Abide by all agreements regarding sentencing

14  factors contained in this agreement.

15        c) At the time of sentencing, provided that defendant

16  demonstrates an acceptance of responsibility for the offense up

17  to and including the time of sentencing, recommend a two-level

18  reduction in the applicable Sentencing Guideline offense level,

19  pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary,

20  move for an additional one-level reduction if available under

21  that section.

22        d) Not further criminally prosecute defendant for

23  violations arising out of defendant's conduct described in the

24  agreed-to factual basis set forth below.  Defendant understands

25  that the USAO is free to criminally prosecute defendant for any

26  other unlawful past conduct or any unlawful conduct that occurs

27  after the date of this agreement.  Defendant agrees that at the

28                          5

1  time of sentencing, the Court may consider the uncharged conduct

2  in determining the applicable Sentencing Guidelines range, the

3  propriety and extent of any departure from that range, and the

4  sentence to be imposed after consideration of the Sentencing

5  Guidelines and all other relevant factors under 18 U.S.C. §

6  3553(a).

7                          NATURE OF THE OFFENSE

8       4.   Defendant understands that for defendant to be guilty

9  of the crime charged in count one of the Information, a

10  violation of 31 U.S.C. §§ 5314 and 5322(a), and 31 C.F.R. §§

11  1010.350, 1010.306(c, d), and 1010.840(b), the following must be

12  true:

13           a) Defendant must have had a financial interest in, or

14  signature or other authority over, a financial account in a

15  foreign country with an aggregate value of more than $10,000 at

16  any time during the calendar year 2009;

17           b) Defendant must have failed to file, with the

18  Department of Treasury, a Report of Foreign Bank and Financial

19  Accounts (Form TD F 90-22.1 "FBAR"), for the calendar year 2009,

20  on or before June 30 of the following calendar year; and

21           c) In failing to file the FBAR for the calendar year

22  2009, defendant must have acted willfully.

23       Defendant admits that he is, in fact, guilty of the offense

24  as described in count one of the Information.

25                      PENALTIES AND RESTITUTION

26       5.   Defendant understands that the statutory maximum

27  sentence that the Court can impose for a violation of 31 U.S.C.

28                                   6

§§ 5314 and 5322(a) and 31 C.F.R. §§ 1010.350, 1010.306(c, d), and 1010.840(b) is: 5 years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or loss resulting from the offense, whichever is greater; and a mandatory special assessment of $100. Defendant agrees to pay the special assessment at or before the time of sentencing.

6.    Defendant agrees to make full restitution for the losses caused by defendant's activities. Defendant understands and agrees that the Court: (a) may order defendant to pay restitution in the form of any additional taxes, interest and penalties that defendant owes to the United States based upon the losses caused by defendant's activities; (b) may order defendant to pay any additional fines that defendant owes to the United States; and (c) may order defendant to pay the costs of prosecution, which may be in addition to the statutory maximum fine stated above. The parties agree that the restitution that should be ordered shall not be less than $243,019 for the years 2003 through 2009.

7.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant

serving a total term of imprisonment greater than the statutory
maximum as stated above.

8.   Defendant understands that, by pleading guilty,
defendant may be giving up valuable government benefits and
valuable civic rights, such as the right to vote, the right to
possess a firearm, the right to hold office, and the right to
serve on a jury.  Defendant understands that once the court
accepts defendant's guilty plea, it will be a federal felony for
defendant to possess a firearm or ammunition.  Defendant
understands the conviction in this case may subject defendant to
various collateral consequences, including but not limited to,
revocation of probation, parole, or supervised release in
another case, and suspension or revocation of a professional
license.  Defendant understands that unanticipated collateral
consequences will not serve as grounds to withdraw defendant's
plea of guilty.

9.   Defendant understands that, if defendant is not a
United States citizen, the felony conviction in this case may
subject defendant to: removal, also known as deportation, which
may, under some circumstances, be mandatory; denial of
citizenship; and denial of admission to the United States in the
future.  The Court cannot, and defendant's attorney also may not
be able to, advise defendant fully regarding the immigration
consequences of the felony conviction in this case.  Defendant
understands that unexpected immigration consequences will not
serve as grounds to withdraw defendant's guilty plea.

///

8

## FACTUAL BASIS

10.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree that the statement of facts contained in Attachment A and fully incorporated herein is sufficient to support defendant's guilty plea to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in the paragraphs below, but is not meant to be a complete recitation of all the facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

## SENTENCING FACTORS

11.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12.   Defendant and the USAO agree and stipulate to the following applicable sentencing guideline factors, utilizing the USSG in effect on November 1, 2015:

a) Count one of the Information is governed by U.S.S.G. §
2S1.3.

b) Because the offense was committed for the purposes of
violating the Internal Revenue laws and because the resulting
offense level is greater under Chapter Two, Part T, than that
determined by operation of U.S.S.G. § 2S1.3(a-b), the most
appropriate guideline from Chapter Two, Part T, applies,
pursuant to U.S.S.G. § 2S1.3(c)(1).

c) The most appropriate guideline from Chapter Two, Part T,
is U.S.S.G. § 2T1.1.  The base offense level is determined from
Section 2T4.1 (Tax Table) corresponding to the tax loss.

d) Because the tax loss is more than $100,000, but not more
than $250,000, the base offense level applicable to count one of
the Information is 16, pursuant to U.S.S.G. §§ 2T1.1(a)(1),
2T4.1(F).

e) Because the offense involved sophisticated means, the
offense level is increased by 2 levels, pursuant to U.S.S.G. §
2T1.1(b)(2).

| | | |
|---|---|---|
| Base Offense Level: | 16 | [§§ 2T1.1 & 2T4.1] |
| Specific Offense Characteristics: | | |
| Sophisticated Means | 2 | [§ 2T1.1(b)(2)] |
| Downward Departure: | | |
| Acceptance of | | |
| Responsibility | (3) | [§§ 3E1.1(a), (b)] |
| | ——— | |
| **Total Offense Level:** | **15** | |

10

1  The USAO will agree to a two-level downward adjustment for

2  acceptance of responsibility (and, if applicable, move for an

3  additional one-level downward adjustment under U.S.S.G. §

4  3E1.1(b)) only if the conditions set forth under paragraph 2,

5  above, are met.

6  Subject to paragraph 24 below, defendant and the USAO agree

7  not to seek, argue, or suggest in any way, either orally or in

8  writing, that any other specific offense characteristics,

9  adjustments, or departures relating to the calculation of the

10  offense level under the Guidelines be imposed.

11  Defendant reserves the right to argue for a more lenient

12  sentence from the sentence suggested under the Sentencing

13  Guidelines by arguing factors set forth in 18 U.S.C. §§

14  3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7). The USAO

15  reserves the right to oppose these arguments, and may argue that

16  the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2),

17  (a)(3), (a)(6), and (a)(7) support a term of imprisonment within

18  the applicable Sentencing Guidelines range, provided that the

19  total offense level used by the Court to determine the guideline

20  range is 15 or higher and defendant's criminal history category

21  is I.

22  Defendant agrees that if, after signing this agreement but

23  prior to sentencing, defendant were to commit an act, or the

24  USAO were to discover a previously undiscovered act committed by

25  defendant prior to signing this agreement, which act, in the

26  judgment of the USAO, constituted obstruction of justice within

27

28

the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

13. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

## WAIVER OF CONSTITUTIONAL RIGHTS

14. Defendant understands that by pleading guilty, defendant gives up the following rights:

a) The right to persist in a plea of not guilty.

b) The right to a speedy and public trial by jury.

c) The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and, if necessary, to have the Court appoint counsel -- at every other stage of the proceeding.

d) The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e) The right to confront and cross-examine witnesses against defendant.

f) The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g) The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

12

1          h) Any and all rights to pursue any affirmative

2    defenses, Fourth Amendment or Fifth Amendment claims, and other

3    pretrial motions that have been filed or could be filed.

4    ADDITIONAL WAIVERS

5       15.   Defendant hereby consents to prosecution on the charge

6    contained in the Information in the Central District of

7    California and waives and gives up any right to:

8          a) Challenge such prosecution on the basis of venue or

9    statute of limitations.

10         b) Seek the transfer of this action to another

11   district.

12   WAIVER OF APPEAL OF CONVICTION

13      16.   Defendant understands that, with the exception of an

14   appeal based on a claim that defendant's guilty plea was

15   involuntary, by pleading guilty defendant is waiving and giving

16   up any right to appeal defendant's conviction on the offense to

17   which defendant is pleading guilty.

18   LIMITED MUTUAL WAIVER OF APPEAL

19      17.   Defendant agrees that, provided that the Court imposes

20   a total term of imprisonment on the count of conviction within

21   or below the range corresponding to a total offense level of 15

22   and the criminal history category calculated by the Court,

23   defendant gives up the right to appeal all of the following:

24   (a) the procedures and calculations used to determine and impose

25   any portion of the sentence; (b) the term of imprisonment

26   imposed by the Court; (c) the fine imposed by the Court,

27   provided it is within the statutory maximum; (d) the amount and

28   13

1 terms of any restitution ordered, provided it requires payment
2 of no more than $243,019; (e) the term of probation or
3 supervised release imposed by the Court, provided it is within
4 the statutory maximum; (f) any of the following conditions of
5 probation or supervised release imposed by the Court: the
6 conditions set forth in General Orders 318, 01-15, and/or 05-02
7 of this Court; the drug testing conditions mandated by 18 U.S.C.
8 §§ 3563(a)(5) and 3583(d); and the alcohol and drug use
9 conditions authorized by 18 U.S.C. § 3563(b); and (g) any
10 condition of probation or supervised release agreed to by
11 defendant in paragraph 2, above.

12      18. The USAO agrees that, provided (a) all portions of the
13 sentence are at or below the statutory maximum specified above
14 and (b) the Court imposes a term of imprisonment within or above
15 the range corresponding to a total offense level of 15 and the
16 criminal history category calculated by the Court, the USAO
17 gives up its right to appeal any portion of the sentence, with
18 the exception that the USAO reserves the right to appeal the
19 amount of restitution ordered if that amount is less than
20 $243,019.

21                  RESULT OF WITHDRAWAL OF GUILTY PLEA

22      19. Defendant agrees that if, after entering a guilty plea
23 pursuant to this agreement, defendant seeks to withdraw and
24 succeeds in withdrawing defendant's plea of guilty on any basis
25 other than a claim and finding that entry into this plea
26 agreement was involuntary, then (a) the USAO will be relieved of
27 all of its obligations under this agreement; and (b) should the

28                           14

1  USAO choose to pursue any charge or any civil, administrative,
2  or regulatory action that was either dismissed or not filed as a
3  result of this agreement, then (i) any applicable statute of
4  limitations will be tolled between the date of defendant's
5  signing of this agreement and the filing commencing any such
6  action; and (ii) defendant waives and gives up all defenses
7  based on the statute of limitations, any claim of pre-indictment
8  delay, or any speedy trial claim with respect to any such
9  action, except to the extent that such defenses existed as of
10 the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

11
12     20.  This agreement is effective upon signature and
13 execution by defendant, defendant's counsel, and an attorney
14 authorized to represent the USAO.

BREACH OF AGREEMENT

15
16     21.  Defendant agrees that if defendant, at any time after
17 the signature of this agreement and execution of all required
18 certifications by defendant, defendant's counsel, and an
19 attorney authorized to represent the USAO, knowingly violates or
20 fails to perform any of defendant's obligations under this
21 agreement ("a breach"), the USAO may declare this agreement
22 breached.  All of defendant's obligations are material, a single
23 breach of this agreement is sufficient for the USAO to declare a
24 breach, and defendant shall not be deemed to have cured a breach
25 without the express agreement of the USAO in writing.  If the
26 USAO declares this agreement breached, and the Court finds such
27 a breach to have occurred, then: (a) if defendant has previously

28                                    15

entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the plea of guilty, and (b) the USAO will be relieved of all of its obligations under this agreement.

22.  Following the Court's finding of a knowing and willful breach of this agreement by defendant, should the USAO elect to pursue any charge or any civil, administrative, or regulatory action that was not filed as a result of this agreement, then:

a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the commencement of any such action.

b) Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c) Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed-to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from any statements should be suppressed or are inadmissible.

16

## COURT AND PROBATION OFFICE NOT PARTIES

23. Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

24. Defendant understands and agrees that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations are not in error, although each party agrees to maintain its views that the calculations in paragraph 12 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

25. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's plea of guilty, and defendant will remain bound to fulfill all defendant's

obligations under this agreement.  Defendant understands that no one – not the prosecutor, defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

26.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in Court.

///

///

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

27.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.


AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

EILEEN M. DECKER
United States Attorney


JORGE ALMONTE                                    11/8/16
Assistant Chief                                  Date
JASON M. SCHEFF
Trial Attorney
U.S. Department of Justice
Tax Division

THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division
ROBERT F. CONTE
Assistant United States Attorney


DAVID RAMIN KALILI                               10/10/2016
Defendant                                        Date


EDWARD M. ROBBINS, JR., Esq.                     10/10/2010
Counsel for Defendant                            Date
DAVID RAMIN KALILI

ATTACHMENT A- FACTUAL BASIS

(a)  At all times relevant to the Information, DAVID RAMIN KALILI (hereinafter "defendant"), resided in Newport Coast, California, and was a citizen of the United States of America.

(b)  At all times relevant to the Information, defendant was a United States taxpayer.  U.S. taxpayers who have a financial interest in, or signature authority over, a bank, securities, or other financial account in a foreign country with an aggregate value of more than $10,000 at any time during a particular calendar year are required to file with the Internal Revenue Service ("IRS") a Report of Foreign Bank and Financial Accounts, Form TD F 90-22.1 ("FBAR").  The FBAR for any calendar year is required to be filed on or before June 30 of the following calendar year.  The FBAR requires that the filer identify the financial institution with which the account is held, the type of account (either bank, securities, or other), the account number, and the maximum value of the account during the calendar year for which the FBAR is being filed.

(c)  Beginning in or around October 1993, and continuing through at least in or about 2008, defendant had a financial interest in, and signature and other authority over several undeclared accounts at UBS AG ("UBS") in Switzerland.  From in or about February 1999, until at least in or about 2009, defendant also had a financial interest in, and signature and other authority over several undeclared accounts at Credit Suisse in Switzerland.  From in or in about 2008 until at least in or about 2009, defendant also had a financial interest

in, and signature and other authority over an undeclared account at Israeli Bank A in Israel.  From at least in or about 1998 until at least in or about 2009, the undeclared accounts in which defendant had a financial interest, and over which defendant had signature and other authority, had an aggregate value of more than $10,000.

(d)   On or about October 28, 1993, defendant opened an undeclared account at UBS in his own name (the "First Undeclared David Kalili UBS Account").  This account was a numbered account, meaning that only an account number, as opposed to defendant's name, appeared on account documents in order to minimize the amount of documents that associated defendant with the account.

(e)   On or about April 7, 1997, defendant's brother-in-law, David Azarian, and David Azarian's wife, opened an undeclared account at UBS in their own names (the "First Undeclared Azarian UBS Account").  This account was a numbered account and at all times relevant had an aggregate value of more than $10,000. Defendant, upon the authorization of David Azarian, was provided with signature authority over the First Undeclared Azarian UBS Account.

(f)   In or about 1998, Dan Kalili, defendant's brother, opened an undeclared account at UBS in his own name (the "First Undeclared Dan Kalili UBS Account").  This account was a numbered account and at all times relevant had an aggregate value of more than $10,000.  Defendant, upon the authorization of Dan Kalili, was provided with signature authority over the

First Undeclared Dan Kalili UBS Account.  In or about October 1998, Dan Kalili directed a UBS Client Advisor to transfer approximately 44 percent of the portfolio in the First Undeclared Dan Kalili UBS Account to the First Undeclared David Kalili UBS Account.

(g) In order to secretly deposit money into the First Undeclared David Kalili UBS Account and promote his efforts to evade the payment of taxes, defendant mailed numerous checks and money orders from the United States to the UBS Client Advisor in Switzerland.  In or about 2001, defendant sent over $270,000 in checks and money orders to the UBS Client Advisor, many in amounts less than $500 and using checks and money orders from numerous institutions.

(h)  On or about February 25, 1999, defendant opened an undeclared account at Credit Suisse in his name (the "Undeclared David Kalili Credit Suisse Account").  On account opening documents for the Undeclared David Kalili Credit Suisse Account, defendant listed that he resided in California.  At all times relevant, this account had an aggregate value of more than $10,000.

(i) In or about 2003, defendant opened a new numbered undeclared account at UBS (the "Second Undeclared David Kalili UBS Account").  At all times relevant, this account had an aggregate value of more than $10,000.

(j)  On or about June 30, 2003, defendant and Dan Kalili opened a joint numbered undeclared account at UBS held in their names (the "Undeclared Joint Kalilis UBS Account").  Funds from

the First Undeclared David Kalili UBS Account were transferred
to the Undeclared Joint Kalilis UBS Account.  In or about 2003,
defendant sent correspondence to UBS requesting that account
files indicate that he resided in Oslo, Norway, when, in fact,
he resided in California.  In or about 2008, the Undeclared
Joint Kalilis UBS Account contained approximately $3,350,284 in
assets.

    (k)  On or about July 19, 2004, defendant and Dan Kalili
opened a joint undeclared account at Credit Suisse held in their
names (the "Undeclared Joint Kalilis Credit Suisse Account").
At all times relevant, this account had an aggregate value of
more than $10,000.

    (l)  In or about August 2008, in order to prevent his
assets at UBS from being discovered, defendant opened and caused
to be opened an undeclared account at Israeli Bank A (the
"Israeli Bank A David Kalili Account").  Defendant transferred
funds from the Undeclared Joint Kalilis UBS Account to the
Israeli Bank A David Kalili Account, which he later partially
declared.  As of in or about August 2009, the Israeli Bank A
David Kalili Account held approximately $1,369,489 in assets.

    (m)  In or about June 2009, in order to prevent his assets
at Credit Suisse from being discovered, defendant closed the
Undeclared David Kalili Credit Suisse Account and the Undeclared
Joint Kalilis Credit Suisse Account and transferred the funds.
As of in or about May 2009, the Undeclared Joint Kalilis Credit
Suisse Account held approximately $2,561,508 in assets.

1        (n)   For each of the calendar years from at least 1998
2    through 2007, defendant filed and caused to be filed with the
3    IRS a U.S. Individual Income Tax Return, Form 1040.  On each of
4    these returns, defendant knowingly and willfully failed to
5    report as income dividends, interest, and other income received
6    by him in one or more bank, securities, and other financial
7    accounts at UBS and Israeli Bank A.  On Schedule B attached to
8    each of these returns, defendant knowingly and willfully failed
9    to disclose that he had an interest in or signature authority
10   over a financial account in Switzerland when, in truth and in
11   fact, and as defendant then and there well knew, he had an
12   interest in and signature authority over a financial account in
13   Switzerland.

14       (o)   For each of the calendar years from at least 1998
15   through 2009, defendant failed to file, and failed to cause to
16   be filed, with the IRS an FBAR disclosing his signatory or other
17   authority over his accounts at UBS and Credit Suisse and, later,
18   his account at Israeli Bank A, as well as the Undeclared UBS
19   Azarian Account and the First Undeclared Dan Kalili UBS Account.
20   For each of the calendar years 2003 through 2005, defendant only
21   filed FBARs disclosing his signatory or other authority over his
22   UBS accounts in 2011, after he was contacted by Special Agents
23   from IRS- Criminal Investigation Division regarding his
24   undeclared accounts.

25       (p)   On or before the filing due dates listed below, in the
26   Central District of California and elsewhere, defendant did
27   knowingly and willfully fail to file with the Commissioner of

28                                        24

the IRS an FBAR disclosing that he had a financial interest in, and signature and other authority over, a bank, securities, and other financial account in a foreign country, to wit, at least one foreign bank, securities, and other financial account at UBS, Credit Suisse, or Israeli Bank A, which had an aggregate value of more than $10,000 during each of the years listed below:

| Calendar Year | Due Date to File FBAR | Bank(s) |
| --- | --- | --- |
| 2006 | June 30, 2007 | UBS and Credit Suisse |
| 2007 | June 30, 2008 | UBS and Credit Suisse |
| 2008 | June 30, 2009 | UBS, Credit Suisse and Israeli Bank A |
| 2009 | June 30, 2010 | Credit Suisse and Israeli Bank A |

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____        10 . 10 . 16
DAVID RAMIN KALILI                      Date
Defendant

26

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am DAVID RAMIN KALILI's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge, no promises, inducements, or representations of any kind have been made to my clients other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

EDWARD M. ROBBINS, JR., Esq.
Attorney for Defendant
DAVID RAMIN KALILI

10/10/2016
Date

27